# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-2645

———————————————

Maria Amplatz

*Plaintiff - Appellant*

v.

Country Mutual Insurance Company

*Defendant - Appellee*

———————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

———————

Submitted: February 10, 2016
Filed: May 25, 2016

———————

Before SHEPHERD, BEAM, and KELLY, Circuit Judges.

———————

BEAM, Circuit Judge.

A jury awarded Maria Amplatz, an insured under a commercial-property insurance policy issued by Country Mutual Insurance Company, $76,065.50 for covered hail and wind damage to the exterior of two properties, but it found that the policy did not cover water damage to the interiors. Amplatz now appeals the district

court's[1] denial of a subsequent motion for new trial on the bases of excluded expert evidence and the jury instructions, and its entry of judgment on the verdict. We affirm.

## I.    BACKGROUND

Amplatz owns four residential, rental properties that are covered under the policy. A hail storm damaged the properties on July 17, 2010, and Amplatz sought coverage for the cost of replacing the damaged portions of the homes. Country disputed Amplatz's claims, and the dispute proceeded to jury trial on two of the properties: the "Game Farm Circle" and "Cherry Avenue" properties. The parties did not dispute that hail and wind damage to the properties' exteriors constituted a covered loss under the policy; they instead disagreed on the amount of coverage and whether the policy covered water damage to the properties' interiors. Amplatz contended that damage to the roofs and windows of the properties allowed water to seep inside and that the resulting interior water damage was a covered loss. Country maintained that water leaked into the properties because of deferred maintenance, not hail damage, and so refused to cover the interior damage.

Amplatz enlisted Paul Norcia, a public adjuster, and Gregory Phillips, a roofing consultant, to assess the damage. Norcia first inspected the properties in September 2011 and issued a written expert report in February 2014. His report described hail and wind damage to both properties' exteriors, particularly the roofs. Norcia observed interior water damage at both properties, and based on its location and its appearance shortly after the storm, he concluded it resulted from water entering the homes through the external damage. He also concluded that the roofs and other items at both properties should be replaced. Phillips issued an expert report in January 2014 based

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

-2-

solely on his review of Norcia's and Country's reports, and photographs of the properties. In that report, he opined regarding the Game Farm Circle property that "[w]ater intrusion within the home may be the result of defects within the . . . roof caused by wind and hail impact." The report did not mention water damage to the Cherry Avenue property's interior but did note that the roof was damaged and concluded that it needed either major repair or replacement. Phillips wanted to take a core sample of the Cherry Avenue property's roof to determine how it was constructed, but snow and ice prevented him from doing so at the time of his initial report. He went to the Cherry Avenue property in May 2014 to take the samples. The samples revealed the presence of moisture both within a top roof layer and an older layer beneath it, which Phillips believed indicated that the roof needed to be replaced rather than merely repaired. The parties deposed Phillips on June 3, 2014. He mentioned his findings with respect to the Cherry Avenue property; however, counsel for Country objected to Phillips's mention of those findings without a supplemental report. Phillips did draft a supplemental report on June 16, 2014, but Amplatz did not disclose it at that time.

Country's adjuster, Mike Laramee, was not of the opinion that water entered the properties through hail and wind damage. At the Game Farm Circle property he observed poor caulking, ill-fitting gaskets, gaps between window glass and frame, and a roofing membrane unattached to a bordering parapet wall. He also observed that the location of the water damage was near the fireplace chase[2] and an area where some roofing membrane connected to an adjacent, cedar-shake roof. At the Cherry Avenue property he noted the roof was in poor condition "as a result of normal weathering and deferred maintenance" and again observed that the interior water damage occurred near the fireplace chase. Finding no external damage through which

---

[2]A "chase" is "[a] rebate or channel cut into walls to accommodate services," such as a fireplace. *Chase*, Oxford Dictionary of Construction, Surveying & Civil Engineering (1st ed. 2012).

water could enter into the properties' interiors, Laramee concluded that the cause of the interior water damage was deferred maintenance. Country also enlisted a roofing consultant, David Balistreri, who corroborated many of Laramee's opinions and offered his own as to whether certain items needed to be replaced.

Amplatz commenced this action in Minnesota state court and Country removed it to federal district court in July 2012 under diversity jurisdiction. The original June 1, 2013, deadline for Amplatz to disclose expert witnesses and reports was postponed, largely on stipulation of the parties, six times, and the final amended progression order set the deadline at February 3, 2014. On December 10, 2014, Amplatz served Country with supplemental expert reports from both Norcia and Phillips. The supplemental report from Norcia included updated damages calculations for each property based both on updated pricing for materials and on the inclusion of interior water damage not presented in Norcia's original report. The supplemental report for Phillips was the as-yet-undisclosed, June 2014 report Phillips drafted addressing the core-sampling results from the Cherry Avenue property. Besides the presence of moisture in the roof, the report also included Phillips's observation of interior water damage to the Cherry Avenue property directly below areas in the roof where he found hail damage and moisture. At that time, jury trial was set for January 6, 2015, making the supplemental reports untimely not only in terms of the progression order but also under Federal Rule of Civil Procedure 26(a)(3)(B)'s requirement that such disclosures be made at least thirty days before trial. Subsequently, the trial was postponed to January 12, 2015, due to Amplatz's counsel's illness.

Country moved in limine to exclude the supplemental Norcia and Phillips reports. The district court first noted that although Amplatz's disclosure was untimely under the federal rules at the time it was served, it would not exclude the reports on this basis because Country had at least thirty days' notice due to the extension of the trial date. The district court then excluded any new items of damage in Norcia's supplemental report, stating, "it is far too late for Amplatz to raise new items of

damage she has not previously claimed." The district court also excluded from the Phillips report "[e]vidence regarding the moisture in the roof as a justification for Amplatz's insistence that the roof must be replace[d]." It observed, "Amplatz offers no credible excuse as to why she did not provide this supplemental report to Country at the time it was drafted" in June 2014. The district court concluded that "[i]t would be prejudicial to Country to allow Amplatz to raise a new theory as to why replacement rather than repair is required as to the Cherry Avenue property" because Country did not have the opportunity to explore the moisture-in-the-roof theory of replacement during discovery. It noted that although the results of Phillips's core sample at the Cherry Avenue property was discussed at his deposition, Country was not obligated to presume the issue of replacement due to roof moisture would be raised absent a supplemental report.

At trial, Amplatz called Norcia, but not Phillips, and Country called Laramee and Balistreri. At the conclusion of trial the district court held a conference on jury instructions in which Amplatz objected to instruction number ten, reproduced here:

> Plaintiff Maria Amplatz claims that she is entitled to coverage under a policy of commercial insurance issued by Country Mutual Insurance Company. Plaintiff must prove by a preponderance of the evidence that her damage is covered by the policy, and must also prove by a preponderance of the evidence the amount of damages for which coverage exists.
>
> The policy provides coverage for damage to Plaintiff's properties during the policy term, which was from February 24, 2010, to February 24, 2011. It does not cover Plaintiff for damage before or after those dates. Therefore, Plaintiff must prove by a preponderance of the evidence that the damage she claims occurred during the policy period or was caused by damage that occurred during the policy period.

Amplatz objected to the second sentence in the second paragraph on the grounds that the language was confusing and did not comport with the policy. She proposed the sentence instead read: "[I]t does not cover plaintiff for damage before or after those dates unless the damage arises from the storm that occurred on July 17 of 2010." The district court denied Amplatz's objection. The jury awarded Amplatz an amount for damages to the exterior of the two properties but awarded nothing for water damage to the interiors. Following the district court's denial of a motion for new trial and its entry of judgment on the verdict, Amplatz now appeals.

## II.    DISCUSSION

### A.    Exclusion of the Supplemental Expert Reports

Amplatz argues that she was so prejudiced by the incorrect exclusion of certain portions of the supplemental reports by Norcia and Phillips that the district court should have granted her a new trial. We review a district court's denial of a motion for new trial for a clear and prejudicial abuse of discretion. Wegener v. Johnson, 527 F.3d 687, 690 (8th Cir. 2008). Where the motion is based on the exclusion of evidence, "[w]e will reverse only if the district court's ruling was based on 'an erroneous view of the law or a clearly erroneous assessment of the evidence' and affirmance would result in 'fundamental unfairness.'" Id. (quoting Davis v. U.S. Bancorp, 383 F.3d 761, 765 (8th Cir. 2004)). Federal Rule of Civil Procedure 16(f)(1)(C) allows a district court to "issue any just orders" to sanction parties for failure to follow a pretrial scheduling order. This includes "prohibiting the disobedient party from . . . introducing designated matters in evidence" under Rule 37(b)(2)(A)(ii). In Patterson v. F.W. Woolworth Co. we said

> the factors that a district court should consider in deciding whether to exclude the testimony of a witness not made known in a manner complying with a pretrial order include the reason for failing to name the

witness, the importance of the witness's testimony, the opposing party's need for time to prepare for the testimony, and whether a continuance would be useful.

786 F.2d 874, 879 (8th Cir. 1986). These factors have also been applied to supplemental expert reports disclosed later than provided for in a progression order. See Transclean Corp. v. Bridgewood Servs., Inc., 101 F. Supp. 2d 788, 795-96 (D. Minn. 2000).

We believe the district court was within its sound discretion when it excluded certain portions of the supplemental Norcia and Phillips reports. The district court considered the Patterson factors, though not in rote fashion as Amplatz argues it should have done. As to the supplemental Phillips report, it noted Amplatz's lack of excuse for the extreme tardiness of her disclosure despite possessing the report six months earlier; the lack of opportunity for Country to develop evidence and respond to the roof-moisture theory of replacement at the Cherry Avenue property; that she did not request a continuance; and that "[a] continuance at the eleventh hour was not appropriate." As to the supplemental Norcia report, the district court again noted its "egregiously untimely disclosure" and observed that the new claimed items of damage amounted to less than 5% of the total damages Amplatz sought.

Furthermore, we agree with the district court that Amplatz was not prejudiced by the exclusion of this evidence to an extent resulting in fundamental unfairness. Amplatz was at liberty to call Phillips, who could testify in support of Amplatz's interior-water-damage theory for both properties as set out in both his original and supplemental reports. (The trial court's order only excluded evidence of moisture in the roof as a justification for replacement.) Norcia's original report set forth similar opinions. Further, Norcia's original report included the opinion that the roof at the Cherry Avenue property needed to be replaced, and Phillips's original report

acknowledged that possibility. The jury clearly rejected Amplatz's claim to any interior damage whatsoever, and so exclusion of the new items of interior damage did not prejudice that claim. Amplatz correctly points out that "the district court's discretion narrows as the severity of the sanction or remedy it elects increases," Wegener, 527 F.3d at 692; however, Amplatz possessed a substantial amount of admissible evidence to support her theories. The district court applied the law correctly under the federal rules and acted within the scope of its discretion in excluding certain portions from the supplemental expert reports.

## B.      The Jury Instructions

Amplatz also argues that the third sentence in the second paragraph of jury instruction number ten misstated Minnesota law and was contradicted by the policy. At the outset, we note that at the instruction conference Amplatz objected to the second sentence in that paragraph. Because she now objects to different language, we review the district court's decision for plain error.[3] Fed. R. Civ. P. 51(c)(1), (d)(2); Dupre v. Fru-Con Eng'g Inc., 112 F.3d 329, 333 (8th Cir. 1997). In the civil context plain error is a "stringently limited standard of review" that "must result in a miscarriage of justice in order to compel reversal." Horstmyer v. Black & Decker, (U.S.), Inc., 151 F.3d 765, 771 (8th Cir. 1998) (first passage quoting Rush v. Smith, 56 F.3d 918, 925 (8th Cir. 1995) (en banc)). Under plain-error review, we will only reverse the district court's use of a jury instruction if the instruction, "taken as a whole and viewed in light of the evidence and applicable law," did not "fairly and adequately submit[] the issues in the case to the jury" so as to affect the substantial rights of the parties. Id. (quoting Kan. City Power & Light Co. v. Ford Motor Credit Co., 995 F.2d 1422, 1430 (8th Cir. 1993)). Perfect clarity is not required. Id.

---

[3] Amplatz makes cursory reference to the second sentence of that paragraph in her brief. She has only presented arguments that address the third sentence, however, and so has abandoned any objection to the second. See Fed. R. App. P. 28(a)(8)(A); Rotskoff v. Cooley, 438 F.3d 852, 854 (8th Cir. 2006).

Amplatz argues that the jury instruction incorrectly required Amplatz to prove that the claimed damage "was *caused by damage* that occurred during the policy period." She points out that under Minnesota law the language of the policy governs the proof necessary to show coverage, see Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co., 825 N.W.2d 695, 705 (Minn. 2013), and that her policy covers damage "resulting from any Covered Cause of Loss," which cause in this case is the hail storm. Thus, argues Amplatz, the jury was misinstructed that Amplatz needed to prove that her claimed damage must have been caused by "damage" rather than a "Covered Cause of Loss." We find this argument unpersuasive. The challenged sentence reads in part: "Plaintiff must prove by a preponderance of the evidence that the damage she claims occurred during the policy period or was caused by damage that occurred during the policy period." This instruction states with sufficient clarity that the claimed damage must *either* have occurred during the coverage period *or* have been caused by damage that occurred during the coverage period. At oral argument counsel raised the concern that the jury would be confused into thinking it was charged with determining whether Amplatz proved that her claimed damage arose from some other damage, rather than from the hail storm. The jury might have believed this "other damage" to be Amplatz's failure to repair the property in the intervening five years between the storm and the trial as opposed to the hail storm itself. We are not persuaded that this difference in language prevented the jury from understanding its task. Instruction number eleven covered policy provisions, explaining that the policy "provides coverage for damage to [Amplatz's] properties caused by windstorm or hail," and that interior damage is covered "if that damage was caused by rain or snow AND if the building or structure first sustained wind or hail damage to its roof or walls through which the rain or snow entered." Further, instruction thirteen covered Amplatz's duty to prevent further damage to her property. Taken as a whole, the jury instructions fairly and adequately presented the issues in the case to the jury.

## III. CONCLUSION

For the aforementioned reasons we affirm the district court's denial of Amplatz's motion for new trial and entry of judgment.

_____